**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

**RICHARD F. STOKES**
*JUDGE*

**SUSSEX COUNTY COURTHOUSE**
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

July 1, 2016

William Manning, Esquire
James D. Taylor Jr., Esquire
Saul Ewing LLP
222 Delaware Avenue, Suite 1200
Wilmington, DE 19899

Richard L. Abbott, Esquire
Abbott Law Firm
724 Yorklyn Road, Suite 240
Hockessin, DE 19707

RE:   ***Delaware Building & Construction Trades Council, AFL-CIO v. The***
      ***University of Delaware and 1743 Holdings, LLC***
      C.A. No.: S14C-06-020 RFS

Submitted: April 14, 2016
Decided: July 1, 2016

Upon Plaintiff's Request for Declaratory Judgment:
Denied.

Dear Counsel:

Presently before the Court is an action for declaratory judgment in which Plaintiff seeks a

determination as to whether Defendants are subject to § 6960 of the State Procurement Act

("SPA").[1]   Ultimately, Plaintiff seeks entry of an order declaring that Defendants are subject to

all of the provisions of 29 *Del. C.* § 6960 based on the contention that Defendants constitute a

"subdivision" of the State of Delaware.   For the following reasons, Plaintiff's Request for

Declaratory Judgment is **DENIED.**

---

[1] The State Procurement Act is codified at 29 *Del. C.* § 6901 *et seq*.

## Background

Plaintiff, Delaware Building & Construction Trades Council, AFL-CIO (the "Trades Council"), is an unincorporated association that represents various laborers including, but not limited to, brick layers, painters, cement masons, sheet metal workers, boilermakers, plumbers and pipefitters, insulators, ironworkers, laborers, roofers, operating engineers, electricians, carpenters, millwrights, and floor layers.[2] Defendants, the University of Delaware and 1743 Holdings, LLC (collectively, the "University"), comprise an educational organization.[3] The University's educational organization is structured such that it is comprised of an entity initially chartered by the General Assembly in 1743—the University of Delaware—and a limited liability company—1743 Holdings, LLC—that is wholly owned by the University of Delaware.[4]

On September 20, 2012, the Trades Council filed its Verified Complaint in Chancery Court, alleging that the University is a subdivision of the State under 29 *Del. C.* § 6960 (the "Prevailing Wage Law") of the SPA and thus subject to the requirements governing certain public works projects promulgated therein. The University filed its Answer on January 2, 2013, denying the allegations set forth by the Trades Council. After both parties moved for summary judgment, the Chancery Court dismissed the action based on a lack of subject matter jurisdiction.[5]

---

[2] Trades Council's Op. Br. in Supp. of its Mot. for Summ. J. at 3 [hereinafter "Trades Op. Br."].
[3] University's Op. Br. in Supp. of its Mot. for Summ. J. at 3 [hereinafter "University's Op. Br."].
[4] *Id.*
[5] *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Del.*, 2014 WL 2218730, at *4 (Del. Ch. May 29, 2014).

With the loss of equitable jurisdiction, this matter was transferred to the Superior Court pursuant to 10 *Del. C.* § 1902.[6] On July 22, 2014, the University moved for summary judgment and argued that there was no actual controversy between the parties. The Trades Council cross-moved for summary judgment and advanced the opposite position. Oral argument on the above-mentioned motions was held on October 28, 2014. On February 20, 2015, this Court determined that the matter was justiciable, and the University's Motion for Summary Judgment was denied.[7] The remaining issue—whether the University is a subdivision of the State—was left unresolved pending further oral argument. Oral argument was held on June 24, 2015, and the Court reserved its decision.[8]

The Trades Council contends that "any entity that is chartered by the State and delegated certain of its powers would qualify as a 'subdivision' of the State under the Plain Meaning Rule of statutory construction."[9] The University argues that "the General Assembly's decision to use only 'subdivision of the state' in the current statutory formulation means that it was comfortable that those words would capture counties and towns."[10]

### Standard

A motion for summary judgment is properly granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[11] If the movant is able to show "that the undisputed facts support [its] claims or defenses, the burden shifts to the

---

[6] 10 *Del. C.* § 1902 ("No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination, . . .").

[7] *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Del.*, 2015 WL 884058, at *1 (Del. Super. Feb. 20, 2015).

[8] An official transcript was filed on April 14, 2016, which permits the inclusion of portions of the oral argument.

[9] Trades Council's Op. Br. at 24.

[10] University's Reply Br. in Supp. of its Mot. for Summ. J. at 7.

[11] *Rogers v. Del. State Univ.*, 2005 WL 2462271, at *2 (Del. Super. Oct. 5, 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

non-moving party to demonstrate that material facts remain in dispute for resolution by the ultimate fact-finder."[12]  While the Court is required to view the evidence in a light most favorable to the non-moving party, "the opponent cannot create a genuine issue of material fact through bare assertions or conclusory allegations."[13]  "If the record indicates that a material fact is disputed, or if further inquiry into the facts is necessary to clarify the application of the law, summary judgment will not be granted."[14]

## Question

Is the University a subdivision of the State of Delaware for the purposes of the Prevailing Wage Law of the SPA?

## Discussion

The question of whether the University is a subdivision of the State of Delaware for the purposes of the Prevailing Wage Law is an interesting affair.  To be sure, the University's relationship with the State is unique.  Given the mixture of proprietary activities and public funding, a determination of whether the University constitutes an agency or subdivision of the State is largely dependent upon the circumstances.[15]  As demonstrated in the parties' briefs, Delaware courts faced with the same question have reached different conclusions.  While these cases are instructive, they are not controlling.

In the context of a United States Constitutional issue, the University's status was dependent upon which Amendment was implicated.  For example, in *Parker v. University of*

---

[12] *Image Hair Solutions Med. Ctr. v. Fox Television Stations*, 2016 WL 425158, at *3 (Del. Super. Jan. 29, 2016) (quoting *Gerstley v. Mayer*, 2015 WL 756981, at *3 (Del. Super. Feb. 11, 2015) (internal quotation marks omitted)).
[13] *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 53 (Del. Super. 1995) (citing *Martin v. Nealis Motors, Inc.*, 247 A.2d 831, 833 (Del. 1968)).
[14] *Grasso v. First USA Bank*, 713 A.2d 304, 307 (Del. Super. 1998).
[15] *See Eaton v. Univ. of Del.*, 2001 WL 863441, at *2 (D. Del. July 31, 2001) (explaining that the University is a state actor in some circumstances but is not in others).

*Delaware*[16] and *University of Delaware v. Keegan*,[17] the Delaware Chancery Court concluded that the University was a state agency for the purposes of equal protection under the Fourteenth Amendment. By contrast, in *Gordenstein v. University of Delaware*,[18] the District Court found that, for the purposes of state sovereignty under the Eleventh Amendment, the University was not an arm or alter ego of the State of Delaware.[19] Distinguishing its conclusion from the conclusion reached in *Parker* and *Keegan*, the *Gordenstein* court explained that the analysis under the Fourteenth Amendment is much less rigorous than its Eleventh Amendment counterpart.[20]

The Trades Council also relies on *Delaware State University v. Delaware State University Chapter of the American Association of University Professors*.[21] In *Delaware State University*, the issue before the Chancery Court was whether Delaware State University ("DSU") was subject to the Public Employment Relations Act ("PERA").[22] To begin its analysis, the court noted that the issue turned on whether DSU was an agency of the State of Delaware.[23] Although DSU ultimately was deemed a state agency, the court rejected the contention that the more formal sense of state agency, as enunciated in *Gordenstein*, provided the proper construction of the term under the PERA.[24] The court explained that, since the issue before the court was statutory interpretation, the proper construction of the PERA and its terms would be driven by the General Assembly's intent.[25]

---

[16] 75 A.2d 225, 230 (Del. Ch. 1950).
[17] 318 A.2d 135, 137 (Del. Ch. 1974).
[18] 381 F. Supp. 718 (D. Del. 1974).
[19] *Id.* at 722.
[20] *Id.* at n.23.
[21] 2000 WL 3352111, at *1 (Del. Ch. May 16, 2000).
[22] *Id.*
[23] *Id.* at *5 n.25.
[24] *Id.*
[25] *Id.* at *4.

By citing this case, the Trades Council sought to support its contention that the University is an agency of the State, thus subjecting it to the requirements of the Prevailing Wage Law. However, the Court's interpretation of the *Delaware State University* decision compels a different conclusion. Like the issue in that case, the issue presently before the Court is one of statutory interpretation. Therefore, the Court's inquiry into whether the University is a subdivision for the purposes of the Prevailing Wage Law will hinge largely on the intent of the General Assembly.

Delaware's Prevailing Wage Law can be found within the SPA and requires contractors on public works projects to pay their laborers at least the prevailing wage as specified by the Delaware Department of Labor. However, this mandate only applies to contracts that meet specific statutory requirements set forth in subsection (a) of the Prevailing Wage Law. Subsection (a) reads, in pertinent part:

> The specifications for every contract or aggregate of contracts relating to a public works project in excess of $500,000 for new construction (including painting and decorating) or $45,000 for alteration, repair, renovation, rehabilitation, demolition or reconstruction (including painting and decorating of buildings or works) to which this *State or any subdivision thereof* is a party and for which the State appropriated any part of the funds and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics . . . .[26]

Unfortunately, "State or subdivision thereof" is not defined in the SPA or elsewhere in Title 29. Nor have Delaware's courts addressed whether the University is a subdivision of the State in this context.

Delaware's rules of statutory construction are straightforward.[27] "When interpreting a statute, the fundamental rule is to ascertain and give effect to the intent of the Legislature."[28]

---

[26] 29 *Del. C.* § 6960(a) (emphasis added).
[27] *Insurance Com'r of State of Del. v. Sun Life Assur. Co. of Canada (U.S.)*, 21 A.3d 15, 20 (Del. 2011) [hereinafter "*Sun Life*"].

First, a court must determine whether or not the statute is ambiguous.[29] If the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls.[30] A disagreement between parties about the meaning of a statute does not create ambiguity.[31] "Rather, a statute is ambiguous only if it is reasonably susceptible to different interpretations, or if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature."[32]

The Court agrees with the Trades Council's assertion during oral argument that the phrase, "State or subdivision thereof," is plain and unambiguous.[33] As such, the plain meaning controls. "In performing this [plain meaning] analysis, we give the statutory words their commonly understood meanings."[34] Courts often rely on dictionaries for assistance with this determination.[35]

Pursuant to 1 *Del. C.* § 302(18), the word "State," as used throughout the Delaware Code, means "the State of Delaware." Because this definition is not dispositive as to the question before the Court, the Court must defer to its commonly understood meaning. As it is commonly understood, "State" means "a politically organized body of people usually occupying a definite territory."[36] The word "subdivision," as it is commonly understood, means "one of the parts into which something is divided."[37] Applying plain meaning analysis, the subdivision of a State would be a body of people less in number than the total number in the state, politically

---

[28] *Id.* (quoting *Nakahara v. NS 1991 Am. Trust*, 739 A.2d 770, 779 (Del. Ch. 1998)).

[29] *Chase Alexa, LLC v. Kent Cty. Levy Ct.*, 991 A.2d 1148, 1152 (Del. 2010).

[30] *Director of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953, 952 (Del. 2003).

[31] *Sun Life*, 21 A.3d at 20.

[32] *Id.* (internal quotation marks omitted).

[33] *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Del.*, C.A. No. S14C-06-020, at 20-21 (Del. Super. June 24, 2015) (TRANSCRIPT).

[34] *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 230 (Del. 1982); *see also* 1 *Del. C.* § 303.

[35] *Freeman v. X-Ray Assocs., P.A.*, 3 A.3d 224, 227 (Del. 2010).

[36] MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/state (last visited May 6, 2016).

[37] MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/subdivision (last visited May 6, 2016).

organized, and occupying a part of the territorial area of the State—hence a city, borough, or town.[38]

This interpretation is further supported, albeit indirectly, in *Department of Labor v. Mattes Electric, Inc.*[39]  In *Mattes*, the court explained why the defendant was subject to the Prevailing Wage Law and stated, "Mattes Electric was the successful bidder on two separate state projects which, because they involved the use of money from the State or a subdivision (City of Newark), required that the contract be executed in accordance with the prevailing wage requirements of 29 *Del. C.* § 6960."[40]  The court's interpretation, that "State or subdivision thereof" included the City of Newark, supports an interpretation of subdivision that means cities, towns, or boroughs.

Interpreting subdivision in the Prevailing Wage Law to exclude the University is also supported by the legislative history of the SPA.  In 1963, when the SPA was enacted, Chapter 69 of Title 29 defined "agency" as "any board, department, bureau, commission or officer of the State."  This definition was amended once, in 1996, and has remained unchanged.  Under the current version of the SPA, "agency" means:

> [E]very board, department, bureau, commission, person or group of persons or other authority which directly receives monies under any budget appropriation act or supplemental appropriation act and which was created and now exists or hereafter is created to:
> (1) execute, supervise, control and/or administer governmental functions under the laws of this State; and/or
> (2) to perform such governmental functions under the laws of this State, or to perform such other duties as may be prescribed; and/or
> (3) to collect and/or use any taxes, fees, licenses, permits or other receipts for service or otherwise for the performance of any function or related to or supported in whole or in part by the laws of this State; and/or

---

[38] *See e.g.*, *City of Norwalk v. Daniele*, 119 A.2d 732, 735 (Conn. 1955).
[39] *Department of Labor v. Mattes Elec., Inc.*, 2000 WL 970716, at *1 (Del. Super. May 5, 2000).
[40] *Id.*

(4) to administer any laws providing for the collection of taxes, fees, permits, licenses or other forms of receipts from any sources whatsoever for the use of the State or any Agency of the State.

The current version of § 6902(1) also includes the following additional language:

"*Agency*" shall include Delaware Technical and Community College and the Delaware State University but *shall not include* any local government unit or agency receiving only grants-in-aid appropriations from the State and no other appropriations, as described herein, the *University of Delaware*, volunteer ambulance/rescue companies, volunteer fire departments and the Delaware Transit Corporation. Nothing in this subsection shall be deemed to exempt any entity that is otherwise required to comply with § 6960 of this title.[41]

While the 1996 amendment may have broadened the definition of agency, the General Assembly expressly excluded the University from the scope of the SPA. In fact, during the debates preceding the amendment of § 6902, the University's exemption from the SPA was discussed at length.[42]

Further, had the General Assembly intended for the University to be subject to the Prevailing Wage Law, it would have included it under the definition of agency as it did in the Energy Performance Contracting Act ("EPCA"). Under the EPCA, which is also found within the SPA, "agency" is defined as "any state agency, authority, or any political subdivision of state or local government, including but not limited to, county, city, township, village or municipal government, local school districts, and institutions of higher education, any state-supported institution, or a joint action agency composed of political subdivisions."[43] At oral argument, both parties agreed that the University is an "institution[] of higher learning" and therefore subject to the EPCA.[44]

---

[41] 29 *Del. C.* § 6902(1) (emphasis added).
[42] *See* S.B. No. 223, 138th Gen. Assemb. (1996) (discussing the exemption of the University from the SPA).
[43] 29 *Del. C.* § 6972(1).
[44] *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Del.*, C.A. No. S14C-06-020, at 14, 24 (Del. Super. June 24, 2015) (TRANSCRIPT).

Additionally, 29 *Del. C.* § 7419 requires Delaware Technical and Community College, DSU and all state departments and agencies to submit construction contract proposals to Facilities Management of the Office of Management and Budget for preapproval. Notably, the University is not included, which begs the question: If the University is a subdivision and subject to the Prevailing Wage Requirements, why is it not included in § 7419?

Finally, the statutorily-created powers given to the University through its Charter[45] clearly indicate the General Assembly's intent to exclude the University from the requirements of the Prevailing Wage Law.[46] Title 14 *Del. C.* § 5106, in pertinent part, provides:

> (b) Notwithstanding any provisions appearing elsewhere in the laws of this State which might suggest or provide the contrary, the entire control and management of the affairs of the University, which is conferred upon the Board of Trustees by the foregoing paragraph, shall be construed, in the area of fiscal and revenue matters, as including, but not as being limited to, the following powers and duties:
>
> . . .
>
> (5) Control of all matters having to do with the formulation of the terms of contracts for the construction of buildings or other University facilities, as well as the manner of awarding contracts or purchasing supplies and equipment; . . . .

The Prevailing Wage Law only applies when agencies or subdivisions of the State of Delaware use State appropriated funds for construction.[47] The University acts in a private capacity when contracting for the construction of its buildings. Therefore, subjecting the University, when acting in a private capacity, to the requirements of the Prevailing Wage Law would be absurd.[48]

Rather than relying on the SPA's definition of "agency" in 29 *Del. C.* § 6902(1), the Trades Council relied on Delaware precedent and statutory law to support its position that the

---

[45] The University's Charter is codified at 14 *Del. C.* § 5101 *et seq*.
[46] *See Rumsey Elec. Co. v. Univ. of Del.*, 334 A.2d 226, 229 (Del. Super. 1975) (holding that the legislature has clearly exempted the University from contracting as a State agency in the construction of its buildings), *aff'd*, 358 A.2d 712 (Del. 1976).
[47] *See* 29 *Del. C.* § 6960.
[48] *See Chase Alexa, LLC*, 991 A.2d at 1152 ("Statutes must be construed as a whole, in a way that gives effect to all of their provisions and avoids absurd results.").

University is a state agency.  It did so because it was the only authority that would support its argument that the University is a subdivision of the State for the purposes of the Prevailing Wage Law by virtue of its status as a state agency.  However, the argument is without merit.  It not only ignores the plain language of § 6902(1) but also the legislative history of the SPA.  Moreover, the interpretation offered by the Trades Council does not consider the intent of the General Assembly.

At the close of oral argument, counsel for the University stated, "If you're a State agency, you have to be a subdivision of the State, but in the very statute we're talking about, the General Assembly has said, [t]he University is not a State agency."[49]  Notwithstanding its brevity, this statement aptly summarizes why the University is not a subdivision for the purposes of the Prevailing Wage Law.

Considering the foregoing, the Trades Council's Declaratory Judgment Action is **DENIED.**

**IT IS SO ORDERED.**

Very truly yours,
*/s/ **Richard F. Stokes***

Richard F. Stokes

cc:     Prothonotary's Office

---

[49] *Delaware Bldg. & Constr. Trades Council, AFL-CIO v. Univ. of Del.*, C.A. No. S14C-06-020, at 76 (Del. Super. June 24, 2015) (TRANSCRIPT).